

FILED
IN OPEN COURT

AUG 1 9 2021

CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 1:20-CR-18 |
| v. | Count 1: Conspiracy to Participate in a Racketeering Enterprise (18 U.S.C. § 1962(d)) |
| ANDY TOVAR,<br>a.k.a "Fearless,"<br>(Counts 1, 2, 4, 5, 7, 9, 12) | Counts 2 to 4: Conspiracy to Commit Murder in Aid of Racketeering Activity (18 U.S.C. § 1959(a)(5)) |
| ROBERTO CRUZ MORENO,<br>a.k.a. "Solo,"<br>a.k.a. "Veloz,"<br>a.k.a. "Loony,"<br>(Counts 1, 3, 5, 6, 8, 11, 13-15) | Count 5: Conspiracy to Distribute Cocaine and Marijuana (21 U.S.C. §§ 841(a)(1) & 846) |
| KEVIN PEREZ SANDOVAL,<br>a.k.a "Noctorno,"<br>a.k.a "Nocturno,"<br>a.k.a "Dengue,"<br>(Counts 1, 4, 5, 7, 9, 12), | Counts 6 and 7: Attempted Murder in Aid of Racketeering Activity (18 U.S.C. §§ 1959(a)(5) and 2) |
| MARVIN TORRES,<br>a.k.a "Trance,"<br>(Counts 1, 4, 5) | Counts 8 and 9: Assault with a Dangerous Weapon in Aid of Racketeering Activity (18 U.S.C. §§ 1959(a)(3) and 2) |
| and | Count 10: Accessory After the Fact (18 U.S.C. § 3) |
| JOSE ROSALES JUAREZ<br>a.k.a "Gears,"<br>a.k.a. "Chucho,"<br>(Counts 1, 4, 5, 10, 16), | Counts 11 and 12: Using and Discharging a Firearm During a Crime of Violence (18 U.S.C. §§ 924(c)(1)(A)(iii) and 2) |
| Defendants. | Count 13: Possession with Intent to Distribute Cocaine (21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2) |
| | Count 14: Possession of a Firearm in Furtherance of a Drug Trafficking Crime (18 U.S.C. §§ 924(c)(1)(A)(i) and 2) |
| | Count 15: Possession of a Firearm by an Illegal Alien (18 U.S.C. § 922(g)(5)(A)) |

Count 16:  Illegal Re-Entry After Removal
Subsequent to Felony Conviction (8 U.S.C.
§§ 1326(a) & (b)(1))

Forfeiture Notice

## SUPERSEDING INDICTMENT

June 2021 Term — at Alexandria

THE GRAND JURY CHARGES THAT:

### GENERAL ALLEGATIONS

At all times material to this Indictment:

1.     The defendants, ANDY TOVAR, also known as "Fearless," ROBERTO CRUZ
MORENO, also known as "Solo," "Veloz," and "Loony," KEVIN PEREZ SANDOVAL, also
known as "Noctorno," "Nocturno," and "Dengue," JOSE ROSALES JUAREZ, also known as
"Gears," and "Chucho," and MARVIN TORRES, also known as "Trance," were members and
associates of La Mara Salvatrucha, also known as "MS-13." MS-13 is a violent international
street gang involved in a variety of criminal activities, including aggravated assault, extortion,
abduction, kidnapping, murder, and obstruction of justice, in the Eastern District of Virginia and
elsewhere.

2.     MS-13 members and associates are located throughout the United States, including
in Virginia, Maryland, Ohio, Texas, New York, and California.  MS-13 also has a large
international presence in El Salvador, Guatemala, Honduras, and Mexico.  MS-13 recruits
members and associates predominantly from the Hispanic community.

3.     To protect the power, reputation, and territory of MS-13, members and associates
are required to use violence, threats of violence, and intimidation.  These acts of violence include
murder and assault with deadly weapons, including firearms, machetes, and knives.  MS-13

2

members and associates maintain and enhance their status in the gang, and the overall reputation of the gang, by participating in such violent acts.

4.      MS-13 recruits are indoctrinated into MS-13 rules, which are ruthlessly enforced. One prominent rule encourages MS-13 members and associates to confront, fight, and kill rival gang members, known as *chavalas*.   Another prominent rule requires MS-13 members and associates to identify individuals cooperating with law enforcement authorities.   When such individuals are identified, MS-13 members and associates are required to notify senior gang members, who typically order (*i.e.*, "green light") the killing of the individuals cooperating with law enforcement authorities.

5.      MS-13 is organized into groups known as "cliques" that hold regular meetings to coordinate gang activities.  Each clique is run by the senior leader, who is designated the "First Word," and the second-in-command, who is designated the "Second Word."  The other members and associates of the clique take their orders from the First Word or Second Word.  The leaders of the respective cliques attend larger general meetings to manage gang operations on a regional and international level.

6.      MS-13 members must attend clique meetings.  At each clique meeting, members are required to pay dues.   At times, MS-13 members are also expected to obtain money through illegal means, including, but not limited to, extortion.  The money is provided to clique leaders and used to finance clique activities, to provide support for clique members who are in jail, and to send funds to MS-13 leadership in El Salvador.

7.      To promote their gang identity, MS-13 members and associates often wear blue or white clothing, as well as clothing displaying the number "13" or numbers that total 13, such as "76." MS-13 members and associates also often have tattoos reading "Mara Salvatrucha," "MS," or "MS-13," and mark their territory with graffiti displaying those names and symbols associated

with the gang. One such symbol is the MS-13 hand sign, meant to resemble both an inverted "M" and the face of the devil, with outstretched fingers representing devil's horns. More recently, some MS-13 members have more discreetly and less publicly signified their membership by avoiding such clothing and hiding such tattoos to avoid detection by law enforcement. MS-13 members refer to one another by their gang names or other nicknames and may not know fellow gang members except by these gang names.

8.      The Guanacos Lil Cycos Salvatrucha, also known as "GLCS," is an MS-13 clique operating in northern Virginia and elsewhere. Defendants TOVAR, CRUZ MORENO, PEREZ SANDOVAL, ROSALES JUAREZ, and TORRES were members or associates of the GLCS clique of MS-13. Co-conspirators C.M.S., O.A.V., K.C.A., D.E., W.A.A.A., E.Z., and J.B., were also members and associates of the GLCS clique of MS-13.

9.      TOVAR, also known as "Fearless," was the First Word of the GLCS clique. C.M.S., also known as "Fire," was the Second Word of the GLCS clique before being replaced by D.E., also known as "Oscuro," as the Second Word of the GLCS clique.

<u>The Racketeering Enterprise</u>

10.      MS-13, including its leaders, members, and associates, constituted an enterprise as defined in Title 18, United States Code, Sections 1959(b)(2) and 1961(4), that is, a group of individuals associated in fact that engages in, and the activities of which affect, interstate and foreign commerce. MS-13 is an ongoing organization whose members and associates function as a continuing unit for a common purpose of achieving the objectives of the enterprise.

<u>Purposes of the Enterprise</u>

11.      The purposes of the MS-13 enterprise include the following:

(a)      Preserving, expanding, and protecting the power, territory, and reputation of MS-13 through the use of violence, threats of violence, and intimidation;

4

(b)     Promoting and enhancing MS-13 and the activities of its members and associates by committing crimes, including, but not limited to, murder;

(c)     Keeping victims, potential victims, and community members in fear of MS-13 and its members and associates through violence, threats of violence, and intimidation;

(d)     Confronting and retaliating against rival gangs through the use of violence, threats of violence, and intimidation;

(e)     Assaulting and murdering individuals believed to be cooperating with law enforcement authorities;

(f)     Hindering and obstructing efforts of law enforcement to identify, apprehend, and successfully prosecute offending gang members; and

(g)     Providing financial support and information to MS-13 members, including those incarcerated in the United States and in El Salvador.

<u>Means and Methods of the Enterprise</u>

12.     Among the means and methods by which MS-13 members and associates conduct and participate in the conduct of the enterprise are the following:

(a)     MS-13 members and associates use violence, threats of violence, and intimidation to preserve, protect, and expand the enterprise's territory and activities and to enhance its prestige, reputation, and position in the community;

(b)     MS-13 members and associates promote a climate of fear through violence, threats of violence, and intimidation;

(c)     MS-13 members and associates use violence, threats of violence, and intimidation to discipline and punish members and associates who violate enterprise rules;

(d)   MS-13 members and associates use cellular phones to discuss gang-related business and to obtain approval for the use of violence to further the purposes of MS-13;

(e)   MS-13 members and associates collect dues to send to MS-13 members incarcerated in the United States and El Salvador and to MS-13 leadership in El Salvador, in an effort to provide financial support to the enterprise;

(f)   MS-13 members and associates use, attempt to use, and conspire to use extortion and drug trafficking to enrich themselves;

(g)   MS-13 members and associates commit violent crimes in order to be promoted in the gang, which has, among others, the following positions in ascending order: *paro*, *observacion*, *chequeo*, and homeboy; and

(h)   MS-13 members and associates use cellular phones to record the violent acts that they commit as a means of proving to gang leadership that they are worthy of promotion within the gang's ranks.

13.   MS-13, through its members and associates, engaged in racketeering activity as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is acts involving murder, in violation of the laws of the Commonwealth of Virginia; and offenses involving drug trafficking, in violation of Title 21, United States Code, Sections 841 and 846.

<u>COUNT ONE</u>
(Conspiracy to Participate in a Racketeering Enterprise)

THE GRAND JURY FURTHER CHARGES THAT:

The GENERAL ALLEGATIONS of this superseding indictment are realleged and incorporated by reference as though fully set forth herein.

Beginning on a date unknown to the grand jury, but at least prior to 2017, and continuing through in and around August 2019, in the Eastern District of Virginia and elsewhere, the defendants, ANDY TOVAR, ROBERTO CRUZ MORENO, KEVIN PEREZ SANDOVAL, JOSE ROSALES JUAREZ, and MARVIN TORRES, being persons employed by and associated with MS-13, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, together with others known and unknown to the Grand Jury, did knowingly and intentionally conspire to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as defined in Sections 1961(1) and (5) of Title 18, United States Code, which pattern of racketeering activity consisted of multiple acts involving murder in violation of Virginia Code, Criminal Law Sections 18.2-32, 18.2-26, 18.2-22, and 18.2-18, and multiple offenses involving the distribution of controlled substances in violation of 21 U.S.C., Sections 841 and 846.

It was further a part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the Enterprise's affairs.

<u>Ways, Manner, and Means to Accomplish the Racketeering Conspiracy</u>

The ways, manner, and means by which the members of the conspiracy conducted the conspiracy to achieve the objective of the conspiracy included the following:

1.      It was part of the ways, manner, and means of the conspiracy that the defendants, as members and associates of MS-13, participated in regular meetings with other MS-13 gang members to discuss, among other things: the structure and organization of the gang; past criminal acts committed against rival gang members and others; MS-13 members and associates who were arrested or incarcerated; the disciplining of MS-13 members and associates; police interactions with MS-13 members and associates; the identities of individuals suspected of cooperating with law enforcement and the proposed actions to be taken against them; plans and agreements regarding the commission of future crimes, including murder, extortion, robbery, drug distribution, illegal possession of firearms, and assault, as well as ways to conceal these crimes; and the enforcement of gang rules.

2.      It was further part of the conspiracy that the defendants and other members and associates of MS-13 agreed to purchase, maintain, and circulate weapons and firearms for use in criminal activity by MS-13 members.

3.      It was further part of the conspiracy that MS-13 received money and income from sources including member dues, and the distribution of illegal narcotics.  Such funds were used for gang purposes including obtaining weapons and providing support for MS-13 gang members including those imprisoned in the United States, inside and outside of Virginia, and in El Salvador.

4.      It was further part of the conspiracy that the defendants and other members and associates of MS-13 agreed that acts of violence, including acts involving murder, kidnapping, and assault, would be committed by members and associates of MS-13 against rival gang

members and others when it suited the enterprise's purposes. MS-13 members also used violence to impose discipline within the gang.

5.      It was further part of the conspiracy that the defendants, and other members and associates of MS-13 would investigate rival gang members or other persons targeted for violence; would obtain information about such targets including locations frequented by them; and would use such information in their plans to attack such targets.

### Overt Acts

In furtherance of the conspiracy and to effect the object thereof, the defendants and others committed overt acts in the Eastern District of Virginia and elsewhere, including, but not limited to, the following:

1.      Beginning on a date unknown to the grand jury, but at least prior to 2017, and continuing through in and around August 2019, MS-13 leaders based in El Salvador contacted MS-13 leaders in Virginia on several occasions to discuss MS-13 organization, rules, discipline among cliques, and approvals to commit certain acts of violence.

2.      Beginning from at least 2017 and continuing through in and around January 2020 MS-13 members from the GLCS clique sent money to MS-13 members based in El Salvador and to incarcerated MS-13 members in the United States.

3.      On or about July 1, 2017, co-conspirator O.A.V. identified a person known to the grand jury and identified in this Superseding Indictment as Victim-1 as an individual the clique should kill in a WhatsApp group chat with defendant TOVAR and co-conspirators C.M.S. and W.A.A.A., and other MS-13 members and associates.

4.      On or about July 1, 2017, as part of his identification of Victim-1 to the group, co-conspirator O.A.V. shared a photograph of Victim-1 in the WhatsApp group chat with the other members of the chat.

5.      Between on or about July 1 and July 2, 2017, defendant TOVAR and co-conspirators O.A.V., C.M.S. and W.A.A.A. communicated with each other, in the Eastern District of Virginia and elsewhere,  via messages, phone calls and in-person to discuss and plan Victim-1's murder, and who would participate in the murder.

6.      On or about July 1, 2017, co-conspirator O.A.V. traveled from Charlottesville, Virginia to Prince William County, Virginia and spent the night at co-conspirators W.A.A.A.'s residence.

7.      On or about July 2, 2017, in Prince William County, Virginia, co-conspirators O.A.V. and W.A.A.A. discussed details about the plan to murder Victim-1 the following day and contacted defendant TOVAR about the plan to murder Victim-1.

8.      On or about July 2, 2017, defendant TOVAR authorized members and associates of GLCS to kill Victim-1.

9.      On or about July 2, 2017, while co-conspirator W.A.A.A. was in Prince William County, Virginia, defendant TOVAR contacted W.A.A.A. to inform him that Victim-1 had been green lit and to instruct W.A.A.A. that he had to participate in the murder and select two other GLCS associates to participate in the murder.

10.      On or about July 2, 2017, co-conspirator O.A.V. traveled from Prince William County, Virginia to Charlottesville, Virginia.

11.      On or about July 3, 2017, co-conspirators W.A.A.A. and E.Z., and another associate of the GLCS clique traveled from Prince William County, Virginia to Charlottesville, Virginia in order to participate in Victim-1's murder.

12.     On or about July 3, 2017, co-conspirators O.A.V., W.A.A.A., E.Z. and other MS-13 associates murdered Victim-1 by stabbing him repeatedly with knives, in Charlottesville, Virginia, because they believed Victim-1 was associated with the 18th Street Gang.

13.     On or about July 3, 2017, co-conspirator W.A.A.A. shared a photograph of Victim-1 bloodied and beaten in a WhatsApp chat with defendant TOVAR and co-conspirators C.M.S. and O.A.V. in order to confirm Victim-1's death.

14.     On or about July 3, 2017, defendant TOVAR and co-conspirator C.M.S. responded to a photo of a dead Victim-1 sent in a WhatsApp chat in order to acknowledge his death, which defendant TOVAR reported to GLCS leadership in El Salvador.

15.     On or about July 3, 2017, co-conspirators O.A.V., W.A.A.A., and E.Z. fled Charlottesville, Virginia, to Prince William County, Virginia, in an effort to escape law enforcement detection for Victim-1's murder.

16.     On or about July 4, 2017, co-conspirators O.A.V. and W.A.A.A. got together at a park area nearby defendant TOVAR's residence where defendant TOVAR informed them that gang leaders in El Salvador were proud of what the clique accomplished the previous night.

17.     On or about July 4, 2017, co-conspirator O.A.V. went to defendant TOVAR's residence to discuss Victim-1's murder and dumping Victim-1's body in a river.

18.     On or about July 4, 2017, defendant TOVAR and co-conspirator O.A.V. participated in a conference call with multiple other members and associates of MS-13 that discussed Victim 1's murder for being a "chavala."

19.     On or about July 4, 2017, defendant TOVAR explained to other members and associates of MS-13 on a conference call why members of his clique took action to murder Victim-1 on another clique's territory.

20.     On or about July 4, 2017, co-conspirator O.A.V. fled from defendant TOVAR's residence back to Prince William County, Virginia, in an effort to escape law enforcement detection for Victim-1's murder.

21.     Sometime prior to March 8, 2019, the exact date being unknown to the grand jury, defendant TOVAR provided members and associates of GLCS in Northern Virginia a Sig Sauer pistol for use by the clique.

22.     On or about March 8, 2019, co-conspirator D.E. contacted a person known to the grand jury and identified in this Superseding Indictment as Victim-2, and Victim-2 went to D.E.'s residence later that day.

23.     On or about March 8, 2019, co-conspirator D.E. contacted defendant CRUZ MORENO in order to solicit CRUZ MORENO's participation in an effort to murder Victim-2.

24.     On or about March 8, 2019, defendant CRUZ MORENO drove his vehicle, in Prince William County, Virginia, and picked up Victim-2 along with co-conspirators D.E., K.C.A. and J.B., having tricked Victim-2 into accompanying them under a ruse that they were going to hang out and smoke marijuana together when, in fact, they intended to kill Victim-2.

25.     On or about March 8, 2019, defendant CRUZ MORENO drove his vehicle, occupied by Victim-2 and co-conspirators D.E., K.C.A. and J.B., to a remote location near Hooe Road in Bristow, Virginia, within the Eastern District of Virginia.

26.     On or about March 8, 2019, after arriving at a remote location near Hooe Road in Bristow, Virginia with Victim-2, co-conspirators D.E., K.C.A. and J.B. exited defendant CRUZ MORENO's vehicle and led Victim-2 into a wooded area.

27.     On or about March 8, 2019, after entering the wooded area with Victim-2, co-conspirator D.E. shot Victim-2 multiple times with a Sig Sauer pistol with the intention of killing Victim-2.

28.   On or about March 8, 2019, after entering the wooded area with Victim-2, co-conspirator J.B. stabbed Victim-2 about his neck area.

29.   On or about March 8, 2019, after attempting to murder Victim-2, co-conspirators D.E., K.C.A. and J.B. returned to defendant CRUZ MORENO's vehicle where CRUZ MORENO aided their escape from police apprehension after the attempted murder of Victim-2 by driving them from the scene to defendant CRUZ MORENO's residence.

30.   On or about March 9, 2019, co-conspirator K.C.A. told co-conspirator C.M.S. that they shot Victim-2 because he was an 18th Street Gang member.

31.   From in or around April 2019 and continuing through in and around August 2019, MS-13 members, and associates from the GLCS clique possessed and distributed controlled substances.

32.   On or about April 2, 2019, defendants CRUZ MORENO and PEREZ SANDOVAL posed for a photo, which was overlaid with the letters "GLCS," with co-conspirators K.C.A., J.B., and other members and associates of MS-13, while the individuals depicted in the photograph flashed various MS-13 gang signs with their hands.

33.   On or about April 19, 2019, defendant TOVAR and defendant ROSALES JUAREZ discussed a cocaine deal on the phone involving defendant CRUZ MORENO.

34.   On or about April 20, 2019, defendant CRUZ MORENO texted defendant TOVAR a photograph taken in his vehicle of what defendant TOVAR described as 48 bags of cocaine inside of a larger plastic bag.

35.   On or about April 20, 2019, defendant CRUZ MORENO was driving his vehicle patrolling the Annandale area of Virginia, within the Eastern District of Virginia, for rival gang members to attack, at the direction of defendant TOVAR, with defendant PEREZ SANDOVAL, J.B. and other members and associates of the GLCS clique.

36. Subsequently, on or about April 20, 2019, defendant CRUZ MORENO possessed the Sig Sauer pistol used in the attempt to murder Victim-2, previously provided to members and associates of the GLCS clique by defendant TOVAR, in his automobile in the area of Annandale, Virginia.

37. On or about April 20, 2019, defendant PEREZ SANDOVAL possessed a machete in his pants while in defendant CRUZ MORENO's vehicle in the area of Annandale, Virginia.

38. On or about April 20, 2019, CRUZ MORENO stored a knife and a baseball bat in his vehicle in the area of Annandale, Virginia.

39. On or about April 20, 2019, defendant CRUZ MORENO possessed four small bags of cocaine, a controlled substance, inside of a larger plastic bag stored in the glove compartment of his automobile in the area of Annandale, Virginia.

40. On or about April 21, 2019, defendant TOVAR was in contact with a member or associate of the GLCS clique concerning the recovery of the Sig Sauer pistol from defendant CRUZ MORENO's vehicle that was used in the attempted murder of Victim-2.

41. On or about April 21, 2019, defendant TOVAR explained to this member or associate of the GLCS clique that it was not likely that the recovered firearm would be traced back to co-conspirator D.E. and that defendant CRUZ MORENO would have to take responsibility for the firearm and any subsequent link of the firearm to Victim-2's attempted murder.

42. On or about May 10, 2019, after being advised to and changing his phone number in case of an investigation following defendant CRUZ MORENO's April 20, 2019 arrest, defendant TOVAR told defendant PEREZ SANDOVAL that he had spoken with co-conspirator K.C.A. about being told that defendant CRUZ MORENO was going to "snitch" and "give up people."

43.     On or about May 10, 2019, K.C.A. informed defendant TOVAR on the phone that he provided defendant TORRES with some of the clique's narcotics and money.

44.     On or about July 14, 2019, defendant TORRES messaged members and associates of GLCS that he observed a chavala, a person known to the grand jury and identified in this Second Superseding Indictment as Victim-3, at a laundromat, in Manassas, Virginia.

45.     On or about July 14, 2019, defendant TORRES messaged other members and associates of GLCS a photograph of Victim-3 with 18th Street gang tattoos on his legs in and around the area of a laundromat in Manassas, Virginia.

46.     On or about July 20 and 29, 2019, defendant TORRES and another associate of GLCS messaged members and associates of GLCS about chavalas, including Victim-3, being in the area of a laundromat in Manassas, Virginia, and otherwise in GLCS's territory.

47.     In and around July 2019, TOVAR authorized members and associates of GLCS to kill Victim-3 because he was a rival gang member in GLCS controlled territory.

48.     On or about July 23, 2019, TOVAR communicated with a member of GLCS leadership in El Salvador about the clique purchasing a Taurus, Millennium, .45 caliber pistol.

49.     Sometime between July 23, 2019, and July 27, 2019, the exact date being unknown to the grand jury, K.C.A. used some of the clique's funds to purchase a Taurus, Millennium, .45 caliber pistol for use by the clique.

50.     On or about July 29, 2019, co-conspirator K.C.A. messaged GLCS members that he intended to kill Victim-3.

51.     On or about July 30, 2019, after receiving screenshots of a draft of statements made by co-conspirator O.A.V. to federal law enforcement, defendant TOVAR told a member of MS-13 that O.A.V. was a "son of a bitch" who had implicated defendant TOVAR in multiple crimes and they discussed killing O.A.V.

52. On or about August 2, 2019, defendant TOVAR and defendant ROSALES JUAREZ discussed how much narcotics defendant TORRES currently had in his possession, so that defendant ROSALES JUAREZ could obtain some to sell.

53. On or about August 4, 2019, defendant TOVAR was informed by members and associates of MS-13 that Victim-3 was at a restaurant and bar located in Manassas, Virginia.

54. On or about August 4, 2019, co-conspirator M.C. texted TOVAR messages and a video of Victim-3, whom co-conspirator M.C. identified as a chavala from his gang tattoos, at the restaurant and bar located in Manassas, Virginia.

55. On or about August 4, 2019, defendant TOVAR text messaged statements to co-conspirator M.C. indicating that he was going to take action to kill Victim-3.

56. On or about August 4, 2019, defendant ROSALES JUAREZ surveilled Victim-3 at the same restaurant and bar located in Manassas, Virginia.

57. On or about August 4, 2019, defendant ROSALES JUAREZ and defendant TOVAR exchanged a photograph of Victim-3 at the restaurant and bar located in Manassas, Virginia, and exchanged messages concerning killing Victim-3 with a firearm.

58. On or about August 4, 2019, defendant TOVAR sent photos and a video of Victim-3 to a member of GLCS leadership in El Salvador to obtain permission to kill Victim-3.

59. On or about August 5, 2019, a video of Victim-3 from defendant TOVAR's phone was shown to members and associates of the GLCS clique in Northern Virginia, so that they could identify, and attack Victim-3 should they encounter him.

60. On or about August 5, 2019, defendants ROSALES JUAREZ and TOVAR exchanged messages about the purchase of a firearm for use by the clique.

61. On or about August 5, 2019, while messaging about the purchase and sale of a firearm for use by the clique, defendant TOVAR informed defendant ROSALES JUAREZ that

he was going to teach defendant ROSALES JUAREZ how to kill an individual with two gunshots – one to the chest and one to the head.

62.     On or about August 6, 2019, defendant ROSALES JUAREZ confirmed to defendant TOVAR via message that he purchased a firearm and had provided the firearm to co-conspirator K.C.A.

63.     Between on or about August 8 and on or about August 10, 2019, defendant ROSALES JUAREZ and defendant PEREZ SANDOVAL discussed the distribution of cocaine and marijuana with J.B.

64.     On or about August 12, 2019, defendant TOVAR and defendant ROSALES JUAREZ discussed on the phone putting rent of $250 a month on an individual who was selling narcotics at a restaurant in GLCS' territory.

65.     On or about August 12, 2019, approximately one hour before co-conspirator K.C.A. shot Victim-3, co-conspirator K.C.A. called defendant TOVAR and informed him that he was with defendant PEREZ SANDOVAL and co-conspirator J.B.

66.     On or about August 12, 2019, co-conspirator K.C.A. called defendant TOVAR and informed defendant TOVAR on the phone that he, PEREZ SANDOVAL, and J.B. had spotted Victim-3, and that Victim-3 was behind the laundromat in Singh Plaza, located on Liberia Avenue in Manassas, Virginia, within the Eastern District of Virginia.

67.     On or about August 12, 2019, during a phone call with defendant TOVAR, co-conspirator K.C.A. requested and was granted permission by TOVAR to kill Victim-3 after co-conspirator K.C.A. assured TOVAR that video cameras in the area would not capture the attack and that he would get a firearm from his residence in order to commit the murder.

68.     On or about August 12, 2019, after receiving a green light from defendant TOVAR to kill Victim-3, defendant PEREZ SANDOVAL drove co-conspirators K.C.A. and J.B. to their house.

69.     At his residence, on or about August 12, 2019, co-conspirator K.C.A. retrieved a firearm, mask, and a change of clothes, and returned to defendant PEREZ SANDOVAL's vehicle where defendant PEREZ SANDOVAL and co-conspirator J.B. were waiting.

70.     On or about August 12, 2019, defendant PEREZ SANDOVAL drove co-conspirators K.C.A. and J.B. to a wooded area near the laundromat at Singh Plaza where Victim-3 was located.

71.     On or about August 12, 2019, co-conspirator K.C.A. changed clothes in the wooded area and provided his previously worn clothes to co-conspirator J.B.

72.     On or about August 12, 2019, co-conspirator J.B. returned to defendant PEREZ SANDOVAL's vehicle and they drove to the location where they were going to pick co-conspirator K.C.A. up.

73.     On or about August 12, 2019, co-conspirator K.C.A. shot Victim-3 with a Taurus, Millennium, .45 caliber pistol with the intention of killing him, in the area behind the laundromat at Singh Plaza, in Manassas, Virginia, because members and associates of the GLCS clique believed Victim-3 was a chavala in the rival 18th Street Gang.

74.     On or about August 12, 2019, co-conspirator K.C.A. fled the scene of the shooting and was picked up by defendant PEREZ SANDOVAL and co-conspirator J.B. in defendant PEREZ SANDOVAL's vehicle.

75.     Following Victim-3's shooting, on or about August 12, 2019, defendant PEREZ SANDOVAL drove co-conspirators K.C.A. and J.B. from the scene of the shooting to defendant

ROSALES JUAREZ's residence, where co-conspirator K.C.A. informed defendant ROSALES JUAREZ he had shot Victim-3.

76. Following Victim-3's shooting, on or about August 12, 2019, defendant ROSALES JUAREZ let defendant PEREZ SANDOVAL borrow one of defendant ROSALES JUAREZ's vehicles so defendant PEREZ SANDVOVAL could leave his own vehicle at defendant ROSALES JUAREZ's residence and depart the residence in another vehicle.

77. Following Victim-3's shooting, on or about August 12, 2019, defendant TORRES messaged members and associates of GLCS to inform them of a heavy police presence that had responded to the neighborhood of Victim-3's shooting.

78. Following Victim-3's shooting, on or about August 12, 2019, defendant TOVAR called defendant ROSALES JUAREZ and co-conspirator K.C.A. in order to discuss plans to assist co-conspirator K.C.A. to escape law enforcement detection for shooting Victim-3, including by getting rid of K.C.A.'s shoes because defendant TORRES said police were tracing steps in the area, and defendant ROSALES JUAREZ renting co-conspirators K.C.A. and J.B. a hotel room, so they could stay away from K.C.A.'s residence.

79. Following Victim-3's shooting, on or about August 12, 2019, defendant ROSALES JUAREZ drove co-conspirators K.C.A. and J.B. to a hotel, in Manassas, Virginia, where defendant ROSALES JUAREZ rented a hotel room under his name for K.C.A. and J.B.

80. On or about August 13, 2019, defendant TOVAR contacted a member of GLCS leadership in El Salvador to provide an update on the effort to kill Victim-3, including by sending this individual a photograph of police vehicles in the neighborhood sent to defendant TOVAR by defendant TORRES.

## Special Sentencing Factors Regarding Count One

On or about July 3, 2017, in the Eastern District of Virginia, the defendant, Andy TOVAR, also known as "Fearless," aided and abetted by others, both known and unknown to the Grand Jury, did murder M.R.G., in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code §§ 18.2-18 and 18.2-32, to wit, TOVAR killed M.R.G. and said killing was willful, deliberate, and premeditated.

(All in violation of Title 18, United States Code, Section 1962(d).)

<u>COUNT TWO</u>
(Conspiracy to Commit Murder in Aid of Racketeering Activity)

THE GRAND JURY FURTHER CHARGES THAT:

The GENERAL ALLEGATIONS of this superseding indictment are realleged and incorporated by reference as though fully set forth herein.

From on or about July 1, 2017, and continuing through on or about July 5, 2017, in Prince William County, Virginia, within the Eastern District of Virginia, and elsewhere, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, defendant ANDY TOVAR, also known as "Fearless," did knowingly combine, conspire, confederate and agree with others, known and unknown to the Grand Jury, to murder M.R.G. ("Victim-1"), in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code §§ 18.2-22 and 18.2-32.

(All in violation of Title 18, United States Code, Section 1959(a)(5).)

## COUNT THREE
### (Conspiracy to Commit Murder in Aid of Racketeering Activity)

THE GRAND JURY FURTHER CHARGES THAT:

The GENERAL ALLEGATIONS of this superseding indictment are realleged and incorporated by reference as though fully set forth herein.

From in and around March 2019, and continuing through on or about March 8, 2019, in Prince William County, Virginia, within the Eastern District of Virginia, and elsewhere, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, defendant ROBERTO CRUZ MORENO, also known as "Solo," also known as "Veloz," also known as "Loony," did knowingly combine, conspire, confederate and agree with others, known and unknown to the Grand Jury, to murder E.P.A. ("Victim-2"), in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code §§ 18.2-22 and 18.2-32.

(All in violation of Title 18, United States Code, Section 1959(a)(5).)

COUNT FOUR
(Conspiracy to Commit Murder in Aid of Racketeering Activity)

THE GRAND JURY FURTHER CHARGES THAT:

The GENERAL ALLEGATIONS of this superseding indictment are realleged and incorporated by reference as though fully set forth herein.

From in and around July 2019, and continuing through on or about August 13, 2019, in Prince William County, Virginia, within the Eastern District of Virginia, and elsewhere, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, defendants ANDY TOVAR, also known as "Fearless," KEVIN PEREZ SANDOVAL, also known as "Noctorno," "Nocturno," and "Dengue," JOSE ROSALES JUAREZ, also known as "Gears," and "Chucho," and MARVIN TORRES, also known as "Trance," did knowingly combine, conspire, confederate and agree with others, known and unknown to the Grand Jury, to murder N.M.S. ("Victim-3"), in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code §§ 18.2-22 and 18.2-32.

(All in violation of Title 18, United States Code, Section 1959(a)(5).)

COUNT FIVE
(Conspiracy to Distribute Cocaine)

THE GRAND JURY FURTHER CHARGES THAT:

The GENERAL ALLEGATIONS of this superseding indictment are realleged and incorporated by reference as though fully set forth herein.

Beginning in and around January 2019, and continuing thereafter up to and including August 2019, the exact dates being unknown to the Grand Jury, in Prince William County, Virginia, within the Eastern District of Virginia, and elsewhere, defendants ANDY TOVAR, also known as "Fearless," ROBERTO CRUZ MORENO, also known as "Solo," also known as "Veloz," also known as "Loony," KEVIN PEREZ SANDOVAL, also known as "Nocturno," also known as "Dengue," JOSE ROSALES JUAREZ, also known as "Gears," also known as "Chucho," and MARVIN TORRES, also known as "Trance," did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with each other, and others both known and unknown to the Grand Jury to commit the following offenses: (i) to unlawfully, knowingly, and intentionally distribute a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and (ii) to unlawfully, knowingly, and intentionally distribute a mixture and substance containing a detectable amount of marijuana, a Schedule 1 controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

(All in violation of Title 21, United States Code, Section 846.)

## COUNT SIX
(Attempted Murder in Aid of Racketeering Activity)

THE GRAND JURY FURTHER CHARGES THAT:

The GENERAL ALLEGATIONS of this superseding indictment are realleged and incorporated by reference as though fully set forth herein.

On or about March 8, 2019, in Prince William County, Virginia, within the Eastern District of Virginia, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, defendant ROBERTO CRUZ MORENO, also known as "Solo," "Loony," and "Veloz," along with others known to the Grand Jury, did knowingly and intentionally attempt to murder E.P.A., in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code Ann. §§ 18.2-26, 18.2-32 and 18.2-18, and did aid, abet, counsel, command, induce, and cause another to commit said offense.

(In violation of Title 18, United States Code, Sections 1959(a)(5) and 2.)

## COUNT SEVEN
(Attempted Murder in Aid of Racketeering Activity)

THE GRAND JURY FURTHER CHARGES THAT:

The GENERAL ALLEGATIONS of this superseding indictment are realleged and incorporated by reference as though fully set forth herein.

On or about August 12, 2019, in Prince William County, Virginia, within the Eastern District of Virginia, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, defendants ANDY TOVAR, also known as "Fearless," KEVIN PEREZ SANDOVAL, also known as "Noctorno," "Nocturno," and "Dengue," along with others known to the Grand Jury, did knowingly and intentionally attempt to murder N.M.S., in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code Ann. §§ 18.2-26, 18.2-32 and 18.2-18, and did aid, abet, counsel, command, induce, and cause another to commit said offense.

(In violation of Title 18, United States Code, Sections 1959(a)(5) and 2.)

## COUNT EIGHT
(Assault with a Dangerous Weapon in Aid of Racketeering Activity)

THE GRAND JURY FURTHER CHARGES THAT:

The GENERAL ALLEGATIONS of this superseding indictment are realleged and incorporated by reference as though fully set forth herein.

On or about March 8, 2019, in Prince William County, Virginia, within the Eastern District of Virginia, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, defendant ROBERTO CRUZ MORENO, also known as "Solo," "Loony," and "Veloz," along with others known to the Grand Jury, did knowingly and intentionally assault E.P.A. with a dangerous weapon, namely a firearm, in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code Ann. §§ 18.2-51 and 18.2-18, and did aid, abet, counsel, command, induce, and cause another to commit said offense.

(In violation of Title 18, United States Code, Sections 1959(a)(3) and 2.)

27

## COUNT NINE
### (Assault with a Dangerous Weapon in Aid of Racketeering Activity)

THE GRAND JURY FURTHER CHARGES THAT:

The GENERAL ALLEGATIONS of this superseding indictment are realleged and incorporated by reference as though fully set forth herein.

On or about August 12, 2019, in Prince William County, Virginia, within the Eastern District of Virginia, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, defendants ANDY TOVAR, also known as "Fearless," KEVIN PEREZ SANDOVAL, also known as "Noctorno," "Nocturno," and "Dengue," along with others known to the Grand Jury, did knowingly and intentionally assault N.M.S. with a dangerous weapon, namely a firearm, in violation of the laws of the Commonwealth of Virginia, specifically, Va. Code Ann. §§ 18.2-51 and 18.2-18, and did aid, abet, counsel, command, induce, and cause another to commit said offense.

(In violation of Title 18, United States Code, Sections 1959(a)(3) and 2.)

<u>COUNT TEN</u>
(Accessory After the Fact)

THE GRAND JURY FURTHER CHARGES THAT:

The GENERAL ALLEGATIONS of this superseding indictment are realleged and incorporated by reference as though fully set forth herein.

On or about August 12, 2019, in Prince William County, Virginia, within the Eastern District of Virginia, defendant JOSE ROSALES JUAREZ, also known as "Gears," and "Chucho," knowing that an offense against the United States had been committed, namely Attempted Murder of N.M.S. in Aid of Racketeering Activity in violation of Title 18, United States Code, Section 1959(a)(5), as set forth and charged in Count Seven of this superseding indictment, and Assault of N.M.S. with a Dangerous Weapon in Aid of Racketeering Activity in violation of Title 18, United States Code, Section 1959(a)(3), as set forth and charged in Count Nine of this superseding indictment, knowingly received, relieved, comforted, and assisted the offenders in order to hinder and prevent their apprehension, trial, and punishment, to wit: the defendant allowed one of the offenders to use one of his vehicles and rented a hotel room for two of the offenders.

(In violation of Title 18, United States Code, Section 3.)

<u>COUNT ELEVEN</u>
(Using and Discharging a Firearm During a Crime of Violence)

THE GRAND JURY FURTHER CHARGES THAT:

The GENERAL ALLEGATIONS of this superseding indictment are realleged and incorporated by reference as though fully set forth herein.

On or about March 8, 2019, in Prince William County, Virginia, within the Eastern District of Virginia, defendant ROBERTO CRUZ MORENO, also known as "Solo," "Loony," and "Veloz," along with others known to the Grand Jury, did knowingly use, carry and discharge a firearm, specifically, a pistol, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely:

      a.  attempted murder in aid of racketeering activity, in violation of Title 18, United States Code, Section 1959(a)(5), as set forth and charged in Count Six of this superseding indictment; and

      b.  assault with a dangerous weapon in aid of racketeering activity, in violation of Title 18, United States Code, Section 1959(a)(3), as set forth and charged in Count Eight of this superseding indictment,

and did aid, abet, counsel, command, induce and cause another to commit said offense.

(In violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 2.)

## COUNT TWELVE
(Using and Discharging a Firearm During a Crime of Violence)

THE GRAND JURY FURTHER CHARGES THAT:

The GENERAL ALLEGATIONS of this superseding indictment are realleged and incorporated by reference as though fully set forth herein.

On or about August 12, 2019, in Prince William County, Virginia, within the Eastern District of Virginia, defendants ANDY TOVAR, also known as "Fearless," and KEVIN PEREZ SANDOVAL, also known as "Noctorno," "Nocturno," and "Dengue," along with others known and unknown to the Grand Jury, did knowingly use, carry and discharge a firearm, specifically, a pistol, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely:

   a. attempted murder in aid of racketeering activity, in violation of Title 18, United States Code, Section 1959(a)(5), as set forth and charged in Count Seven of this superseding indictment; and

   b. assault with a dangerous weapon in aid of racketeering activity, in violation of Title 18, United States Code, Section 1959(a)(3), as set forth and charged in Count Nine of this superseding indictment,

and did aid, abet, counsel, command, induce and cause another to commit said offense.

(In violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 2.)

31

<u>COUNT THIRTEEN</u>
(Possession with Intent to Distribute Cocaine)

THE GRAND JURY FURTHER CHARGES THAT:

The GENERAL ALLEGATIONS of this superseding indictment are realleged and incorporated by reference as though fully set forth herein.

On or about April 20, 2019, in Fairfax County, Virginia, within the Eastern District of Virginia, defendant ROBERTO CRUZ MORENO, also known as "Solo," also known as "Veloz," also known as "Loony," did unlawfully, knowingly, and intentionally possess with intent to distribute a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance.

(In violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C), and Title 18, United States Code, Section 2.)

<u>COUNT FOURTEEN</u>
(Possession of a Firearm in Furtherance of a Drug Trafficking Crime)

THE GRAND JURY FURTHER CHARGES THAT:

The GENERAL ALLEGATIONS of this superseding indictment are realleged and incorporated by reference as though fully set forth herein.

On or about April 20, 2019, in Prince William County, Virginia, within the Eastern District of Virginia, defendant ROBERTO CRUZ MORENO, also known as "Solo," "Loony," and "Veloz," along with others known to the Grand Jury, did knowingly possess a firearm, specifically, a pistol, in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, namely:

   a.   possession with intent to distribute cocaine, in violation of Title 21, United States Code,

         Sections 841(a)(1) and 846, as charged in Count Twelve of this superseding indictment,

and did aid, abet, counsel, command, induce and cause another to commit said offense.

(In violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.)

33

## COUNT FIFTEEN
(Possession of a Firearm by an Illegal Alien)

THE GRAND JURY FURTHER CHARGES THAT:

On or about April 20, 2019, in Fairfax County, Virginia, within the Eastern District of Virginia, defendant ROBERTO CRUZ MORENO, also known as "Solo," also known as "Veloz," also known as "Loony," knowing he was illegally and unlawfully present in the United States, knowingly possessed in and affecting interstate and foreign commerce a firearm, specifically, a Sig Sauer, model P220, .45 caliber pistol, bearing serial number G275200.

(In violation of Title 18, United States Code, Section 922(g)(5)(A).)

<u>COUNT SIXTEEN</u>
(Illegal Re-entry after Removal Subsequent to a Felony Conviction)

THE GRAND JURY FURTHER CHARGES THAT:

On or about February 17, 2021, in Manassas, Virginia, within the Eastern District of Virginia, defendant JOSE ROSALES JUAREZ, an alien who was removed from the United States, on or about October 17, 2019, and whose removal was subsequent to the conviction for commission of a felony offense, namely, Grand Larceny in Prince William County Circuit Court, on or about January 29, 2010, was found in the United States without having obtained the express consent of the Attorney General or the Secretary of the Department of Homeland Security to reapply for admission to the United States.

(In violation of Title 8, United States Code, Sections 1326(a) and (b)(1).)

## FORFEITURE NOTICE

THE GRAND JURY FURTHER FINDS that there is probable cause that the property described below is subject to forfeiture pursuant to the statutes described herein.

Pursuant to Rule 32.2(a), the defendants are hereby notified that, upon conviction of any of the offenses set forth in this Superseding Indictment, they shall forfeit to the United States all firearms and ammunition involved in or used in such violation. This property includes, but is not limited to, a Sig Sauer, model P220, .45 caliber pistol, bearing serial number G275200.

Defendants are hereby notified, pursuant to Federal Rule of Criminal Procedure 32.2(a), that upon conviction of the offense set forth in Count 1 of this Superseding Indictment, they shall forfeit to the United States, pursuant to 18 U.S.C. § 1963, the following: (1) any interest acquired or maintained in violation of 18 U.S.C. § 1962; (2) any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which they have established, operated, controlled, conducted, or participated in the conduct of, in violation of 18 U.S.C. § 1962; and (3) any property constituting, or derived from, any proceeds obtained, directly or indirectly, from racketeering activity in violation of 18 U.S.C. § 1962.

Defendants are hereby notified, pursuant to Federal Rule of Criminal Procedure 32.2(a), that upon conviction of either of the offenses set forth in Counts 5 and 12 of this Superseding Indictment, they shall forfeit to the United States, pursuant to 21 U.S.C. § 853, the following: (1) any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of the violation; and (2) any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, the violation.

The assets subject to forfeiture include, but are not limited to, a monetary judgment in the amount that each defendant obtained from the violations set forth in Counts 1, 5, and 12 of this Superseding Indictment.

As to Count 1 of this Superseding Indictment, pursuant to 18 U.S.C. § 1963(m), the defendants shall forfeit substitute property, if, by any act or omission of the defendants, the property referenced above cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

As to Counts 2 through 14 of this Superseding Indictment, pursuant to 21 U.S.C. § 853(p), the defendants shall forfeit substitute property, if, by any act or omission of the defendants, the property referenced above cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

(Pursuant to Fed. R. Crim. P. 32.2(a); Title 18 U.S.C. §§ 924(d)(1) and 1963; 21 U.S.C. § 853; and 28 U.S.C. § 2461(c).)

A TRUE BILL

Pursuant to the E-Government Act,
The original of this page has been filed
FOREPERSON under seal in the Clerk's Office

Raj Parekh
Acting United States Attorney

By: _____

Nicholas U. Murphy II
Nicholas J. Patterson
Assistant United States Attorneys

37